## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TIMOTHY ALLEN SKAGGS**
3140 Portman Road
Columbus, OH  43232

        PLAINTIFF,

-- VS --

**METROPOLITAN LIFE
INSURANCE COMPANY**
Attn: Steven A. Kandarian, CEO
200 Park Avenue
New York, NY 10166

**BAYVIEW LOAN SERVICING LLC**
Attn: Richard O'Brien, President
4425 Ponce De Leon, 5th Floor
Coral Gables, FL  33146;

**WELLS FARGO BANK, NA
SUCCESSOR BY MERGER TO
WACHOVIA BANK, NA**
Attn: Tim Sloan, C.E.O.
420 Montgomery St
San Francisco, CA 94104

**REIMER, ARNOVITZ, CHERNEK &
JEFFREY CO., L.P.A.**
Attn: Dennis Reimer, Stat. Agent
30455 Solon Road
Solon, OH  44139;

**U.S. BANK N.A., AS TRUSTEE FOR
BAYVIEW OPPORTUNITY
MASTER FUND IIIB NPL REMIC
TRUST 2016-B**
Attn: Corporate Trust Services
60 Livingston Ave., EP-MN-WS3D
St. Paul, MN 55107;

CASE NO.: _16 CV 1099_

PPN:  180-004426-00

JUDGE:

MAGISTRATE:

**COMPLAINT FOR
DECLARATORY JUDGMENT,
QUIET TITLE, AND
OTHER RELIEF**

**WITH JURY DEMAND
ENDORSED HEREON**

1

| | |
|---|---|
| **CLEARSPRING LOAN** | : |
| **SERVICES, INC.** | : |
| Attn: Ron Bendalin, E.V.P. | : |
| 18451 N. Dallas Parkway, Suite 100 | : |
| Dallas, TX 75287 | : |
| | : |
| **JOHN DOE** | : |
| Address unknown; | : |
| | : |
| **JANE DOE** | : |
| Address unknown; | : |
| | : |
| and | : |
| | : |
| **JAMIE DOE** | : |
| Address unknown. | : |
| | : |

     DEFENDANTS.

<u>Parties</u>

1. Plaintiff is the owner of that certain real property commonly known as 3140 Portman Road, Columbus, Ohio 43232 (hereinafter referred to as "**the Premises**"), under a Deed filed on March 12, 2004 at Instrument Number 200403120054270, Franklin County Recorder, the legal description of which is as follows:

> Situated in the State of Ohio, County of Franklin, Township of Madison and described as follows:
>
> Being Log Number 237 of Qualston East, as the same is numbered and delineated upon the recorded plat of record in Plat Book 38, Pages 1-8, Recorder's Office, Franklin County, Ohio.
>
> Parcel No.: 180-004426-00.

2. A copy of Plaintiff's deed to the Premises that was recorded as Instrument No. 200403120054270 in the Office of the Franklin County Recorder on March 12, 2004 is attached hereto as **Exhibit A.**

3. Plaintiff further states that he is in physical possession of the Premises.

4. Defendant Metropolitan Life Insurance Company ("**MetLife**") is a corporation having its corporate headquarters at 200 Park Avenue, New York, NY 10166.

5. Defendant Bayview Loan Servicing, LLC ("**Bayview**") is a limited liability company having its corporate headquarters at 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146.

6. Defendant Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. ("**Wells Fargo**") is a National Banking Association with a corporate headquarters at 420 Montgomery Street, San Francisco, California.

7. Defendant Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. ("**Reimer**") is an Ohio Legal Professional Association having its headquarters at 30455 Solon Road, Solon, OH 44139.

8. Defendant U.S. Bank N.A., as Trustee for Bayview Opportunity Master Fund IIIb NPL REMIC Trust 2016-B ("**U.S. Bank**") is a National Banking Association with a corporate headquarters at 800 Nicollet Mall, Minneapolis, MN 55402 and with their Corporate Trust Services located at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55207.

9.     Defendant ClearSpring Loan Services, Inc. ("**ClearSpring**") is a corporation having its corporate headquarters at 18451 N. Dallas Parkway, Suite 100, Dallas, TX 75287.

10.     Defendants John Doe, Jane Doe, and Jamie Doe ("**Unknown Defendants**") are individuals, trustees, corporations, national associations, or other entities the number, identity, and location of which are presently unknown and cannot be discovered through reasonable due diligence but whose identity may become known throughout the course of discovery and litigation.

11.     This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Mr. Skaggs maintains the Home as his primary residence in this District.

## Background

13.     Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

14.     Plaintiff states that on or about January 29, 2004 (the "**Execution Date**"), he executed a Note (the "**Note**") in favor of SouthTrust Mortgage Corporation for the face amount of $78,500.00.

15.     Plaintiff states that he does not have a copy of the Note and has been informed by MetLife during the course of prior litigation that the original was lost more than three years ago.

16.     Plaintiff further states that on or about the Execution Date, he executed a Mortgage (the "**Mortgage**") as to the Premises securing the Note, the Mortgage stating that it ran in favor of Mortgage Electronic Registration Systems, Inc. "MERS" as a nominee for SouthTrust Mortgage Corporation and its successors and assigns. **Exhibit B**.

17.     On information and belief, the original Note was endorsed in blank by Paul J. Gilly, Assistant Vice President of South Trust Mortgage Corporation, on an unknown date occurring on, or after, the Execution Date.

18.     On information and belief, South Trust Mortgage Corporation never transferred physical possession of the original of the Note.

19.     On information and belief, an Assignment of Mortgage was executed by Bethany Hood, purportedly Vice President of MERS, on August 16, 2007 purportedly transferring the Mortgage to Wachovia Bank, N.A. **Exhibit C**.

20.     On information and belief, Wachovia Bank, N.A. did not receive physical possession of the Note at the time MERS purported to assign the Mortgage, nor at any time thereafter.

21.     On information and belief, Wachovia Bank, N.A. was merged into Defendant, Wells Fargo Bank, N.A. effective March 20, 2010. **Exhibit D**.

22.     On information and belief, Wells Fargo Bank N.A. did not receive physical possession of the Note when Wachovia merged into it, and eventually Wells Fargo created a record of this fact and of the lost status of the Note in a Lost Note Affidavit and Indemnification Agreement ("**Lost Note Affidavit**") which was

executed by Michael I. Hambleton, Vice President of Loan Documentation for Wells Fargo Bank, N.A., on May 30, 2013. **Exhibit E**.

23. On information and belief, the original Note was lost by SouthTrust Mortgage Corporation, Wachovia Bank, N.A., Wells Fargo Bank, N.A. or some other undeterminable party on an unknown date between the Execution Date and May 30, 2013.

24. On information and belief, an Assignment of Mortgage was executed by Juliane Christensen, Vice President Loan Documentation for Wells Fargo Bank, N.A., on August 16, 2013, more than 2 months after the Lost Note Affidavit was executed, transferring the Mortgage to Bayview Loan Servicing, LLC. **Exhibit F**.

25. On information and belief, an Assignment of Mortgage was executed by Robert G. Hall, Vice President for Bayview Loan Servicing, LLC, on May 12, 2014, almost a full year after the Lost Note Affidavit was executed, transferring the Mortgage to Metropolitan Life Insurance Company. **Exhibit G**.

26. On September 4, 2014, MetLife c/o Bayview caused Reimer to file a Complaint for Foreclosure with Reformation and Notice under the Fair Debt Collection Practices Act (the "**Foreclosure Complaint**") against Plaintiff and other named Defendants in Franklin County Court of Common Pleas Case No. 14CV009145 (the "**Prior Case**"). **Exhibit H**.

27. The Foreclosure Complaint attached a purported copy of the Note, but did not attach a copy of the Lost Note Affidavit, and alleged at paragraph 1 that "the whereabouts of the original note is unknown and has been either misplaced or lost" which statement was misleading as it was already known to MetLife, Bayview

6

and Reimer that, via the Lost Note Affidavit, the Note was definitely lost, by Wells Fargo or some other predecessor in interest, and not simply misplaced by MetLife.

28.    On information and belief, Bayview was employing Lauren Blain as a Document Coordinator in September 2014.

29.    On September 22, 2014, Lauren Blain executed an Affidavit (the "**Blain Affidavit**") in her official capacity as a Document Coordinator for Bayview.  **Exhibit I**.

30.    MetLife, Bayview, and Reimer caused the Blain Affidavit to be filed of record in the Prior Case on October 27, 2014 supporting MetLife's Motion for Default Judgment.

31.    Paragraph 2 of the Blain Affidavit states that "[MetLife] (or [MetLife's] agent on behalf of [MetLife]) **has possession of the original note** that is the subject matter of this cause of action and therefore has an enforceable interest that allows [MetLife] (or [MetLife's] agent on behalf of [MetLife]) the right to foreclose the mortgage given to secure said note." (emphasis added.)

32.    Paragraph 6 of the Blain Affidavit states that "the documents attached to the Complaint as Exhibits thereto are true copies of the original loan documents maintained as business records by Bayview Loan Servicing, LLC."

33.    The Blain Affidavit falsely implied that the Note had been located by Bayview or MetLife subsequent to the filing of the Foreclosure Complaint.  On information and belief, no employee, agent, contractor, or representative of Bayview or MetLife has ever been in possession of the original Note.

34. On information and belief, no employee, agent, contractor, or representative of Bayview or MetLife has ever compared the original Note to the copy, or copies, being maintained as business records by Bayview for MetLife.

35. The court entered judgment in the Prior Case in reliance on the Blain Affidavit. **Exhibit J**.

36. On information and belief, Bayview was employing Nicole Currey as a Document Coordinator in November 2015.

37. On November 10, 2015, Nicole Currey executed an Affidavit (the "**Currey Affidavit**") in her official capacity as a Document Coordinator for Bayview. **Exhibit K**.

38. MetLife, Bayview, and Reimer caused the Currey Affidavit to be filed of record in the Prior Case on November 16, 2015 supporting MetLife's Motion for Summary Judgment.

39. The Currey Affidavit attached a copy of the Lost Note Affidavit and states at paragraph 6 that "Met Life is entitled to enforce the Note as evidence [sic] by the Lost Note Affidavit and indorsements thereon."

40. The Lost Note Affidavit was unavailable to, and undiscoverable by, Plaintiff for purposes of computing all relevant statutes of limitation until it was filed with the Currey Affidavit filed of record in the Prior Case on November 16, 2015.

41. On information or belief, Bayview and/or MetLife, individually or in concert, intentionally or recklessly withheld the Lost Note Affidavit from the Foreclosure Complaint and Blain Affidavit in bad faith and with improper motives.

42. MetLife chose to dismiss the Prior Case on December 7, 2015 in lieu of opposing the pending motion for summary judgment alleging fatal disassociation of the Note and Mortgage rendering the Note unsecured and the Mortgage unenforceable.

43. On information and belief, MetLife has executed an Assignment of Mortgage or has otherwise transferred the Mortgage to U.S. Bank effective March 24, 2016. **Exhibit L**.

44. On information and belief, Bayview has transferred servicing rights for the Mortgage to ClearSpring effective July 12, 2016. **Exhibit M**.

45. On information and belief, the Note has not been located and remains lost.

46. The Plaintiff feels he has no choice but to bring this action to assert his rights as already outlined by the Revised Code and to ensure that none of the Defendants attempt to improperly foreclose on his property ever again.

<u>Causes of action</u>

### COUNT ONE:
### DECLARATORY JUDGMENT RELEASING THE NOTE
### [All Defendants]

47. Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

48. At all times relevant to this case, the Ohio Revised Code states that a lost instrument may only be enforced by the party who "was in possession of the instrument and entitled to enforce it when loss of possession occurred." R.C. §1303.38.

9

49. Wells Fargo, or one of Wells Fargo's predecessors in interest, lost the Note prior to Wells Fargo's execution of the Lost Note Affidavit on May 30, 2013.

50. Plaintiff states that pursuant to R.C. §1303.38, the Note - once lost, destroyed, or stolen - could not be negotiated or transferred through law or equity.

51. Any transfer of the Mortgage after execution of the Lost Note Affidavit on May 30, 2013, without recovery of the physical Note, could not have caused a concurrent transfer of the right to enforce the Note under R.C. §1303.38.

52. Despite Wells Fargo's lack of physical possession of Note, and admitted inability to locate the Note, Wells Fargo assigned the Mortgage to Bayview on August 16, 2013.

53. Bayview was not in possession of the Note and entitled to enforce it when loss of the Note occurred.

54. Also, despite being the mortgagee of record between August 29, 2013 and May 15, 2014 Bayview has never been in physical possession of the Note.

55. The Assignment of Mortgage from Wells Fargo to Bayview on August 16, 2013 resulted in a permanent and incurable separation of the Note from the Mortgage in that Wells Fargo clearly alienated the Mortgage without the Note after the Note was confirmed to be lost by the Lost Note Affidavit.

56. Despite its lack of entitlement to enforce the lost Note, and never taking physical possession of the Note, Bayview assigned the Mortgage to MetLife on May 12, 2014.

57. Defendant MetLife was not in possession of the Note and was not entitled to enforce it when loss of the Note occurred.

10

58.     Also, despite being the mortgagee of record between May 15, 2014 and present, MetLife has never been in physical possession of the Note.

59.     The Assignment of Mortgage to MetLife, the second one to occur after the Lost Note Affidavit clearly established the loss of the Note without recovery of the physical Note, added an additional degree of incurable separation between the Note and Mortgage.

60.     Despite its lack of entitlement to enforce the lost Note, and never taking physical possession of the Note, MetLife assigned the Mortgage to U.S. Bank on or about March 24, 2016.

61.     Defendant U.S. Bank was not in possession of the Note and was not entitled to enforce it when loss of the Note occurred.

62.     Also, despite being alleged to be the current mortgagee between March 24, 2016 and present, U.S. Bank has never been in physical possession of the Note.

63.     The Assignment of Mortgage to U.S. Bank, the third one to occur after the Lost Note Affidavit clearly established the loss of the Note without recovery of the physical Note, added an additional degree of incurable separation between the Note and Mortgage.

64.     The express language of R.C. §1303.38 prohibits any legal or equitable interpretations that the right to enforce the Note can travel with the Mortgage, if the Mortgage is assigned after the physical loss of the Note.

65. Without any legally cognizable interest in favor of U.S. Bank, the Plaintiff is not in a position to be paying U.S. Bank, or any other alleged party in interest, for a debt that is alleged to due and owing under Note. Any payments that the Plaintiff would attempt to make on the Note to U.S. Bank or its servicer ClearSpring, or any other claimed mortgagee, would be to Plaintiff's continued financial detriment.

66. Based on the foregoing the Plaintiff is requesting this Court declare that neither U.S. Bank, ClearSpring, MetLife, Bayview nor Wells Fargo nor any other party in interest have a legally enforceable interest in the Note on the basis that either (a) that the Note and Mortgage have been disassociated, rendering the Note unsecured, and/or (b) that the Note is unenforceable by any of the Defendants without specific proof of compliance with R.C. §1303.38.

67. The Court should further issue a declaration extinguishing the Plaintiff's obligation under the Note.

### COUNT TWO:
### QUIET TITLE
### [All Defendants]

68. Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

69. Ohio Revised Code §5303.01 is the only statutory method by which a party can initiate a quiet title action.

70. Plaintiff states that he has standing to bring this Quiet Title action because he is the title owner, and is in possession, of the Premises.

71.     Plaintiff states that Defendants Wells Fargo, Bayview, MetLife, U.S. Bank, ClearSpring, and other Unknown Defendants may claim some interest in a Note originally delivered to SouthTrust Mortgage Corporation on January 29, 2004.

72.     Plaintiff states that Defendants Wells Fargo, Bayview, MetLife, ClearSpring, and U.S. Bank may claim some interest in the Premises through the Mortgage originally delivered to Mortgage Electronic Registration System as nominee for SouthTrust Mortgage Corporation on January 29, 2004.

73.     Plaintiff states that the Defendant MetLife is the current Mortgagee of record.

74.     Plaintiff states that the Defendant U.S. Bank is alleged to be the actual current Mortgagee, but no Assignment of Mortgage has been recorded.

75.     Plaintiff states that Defendant MetLife was not in possession of the Note and entitled to enforce it when the Note was lost by Wells Fargo or some other prior holder of the Note.

76.     Plaintiff states that Defendant U.S. Bank was not in possession of the Note and entitled to enforce it when the Note was lost by Wells Fargo or some other prior holder of the Note.

77.     Plaintiff states that at the time U.S. Bank, MetLife, and Bayview each acquired their interests in the Mortgage, they were statutorily incapable of acquiring any interest in the Note.

78.     Plaintiff states that the efficacy of the Mortgage has been destroyed, the Note has been rendered unsecured, and the Mortgage is now an unenforceable cloud on title to the Premises.

79.     Plaintiff states that he is entitled to an Order to quiet title against Defendants U.S. Bank, ClearSpring, MetLife, Bayview and Wells Fargo, by striking the Mortgage and cancelling the Plaintiff's obligation under the Mortgage and instructing the Office of the Franklin County Recorder to release the Mortgage attached hereto as Exhibit B.

### COUNT THREE A to D:
### FAIR DEBT COLLECTION PRACTICES ACT
### [Defendants Bayview, MetLife, and Reimer]

80.     Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

81.     Bayview is a debt collector who received an assignment or transfer of the Mortgage after it was in default, solely for the purpose of facilitating collection of the alleged debt.

82.     After Bayview assigned the Mortgage to MetLife it continued, by contract with MetLife, to be the servicer of the Mortgage, i.e., MetLife's debt collection agent.

83.     Bayview is also a debt collector because it uses interstate commerce or the mails to carry out its business purpose of collecting debts, owed or due, or asserted to be owed or due to another, in this case MetLife.

84.     MetLife is a debt collector who received an assignment or transfer of the Mortgage after it was in default, solely for the purpose of facilitating collection of the alleged debt.

85.     Reimer is a debt collector because it is a law firm, retained by Bayview on behalf of MetLife to collect a debt.

86.    The Note and Mortgage qualify as consumer debt because Plaintiff is a natural person who was obligated to pay the debt, and the debt involved was a Note and Mortgage on Plaintiff's primary residence.

87.    Bayview, through its parent, subsidiary, or affiliated entity, was the "Purchaser" identified in the Lost Note Affidavit.

88.    Bayview had knowledge, actual or constructive, that the Note had been lost sometime prior to May 30, 2013.

89.    MetLife had knowledge, actual or constructive, that the Note had been lost sometime prior to May 30, 2013.

90.    Bayview had knowledge, actual or constructive, of the existence of the Lost Note Affidavit and had an obligation to provide it to Plaintiff and the court in the Prior Case as part of the Foreclosure Complaint and Blain Affidavit.

91.    MetLife had knowledge, actual or constructive, of the existence of the Lost Note Affidavit and had an obligation to provide it to Plaintiff and the court in the Prior Case as part of the Foreclosure Complaint and Blain Affidavit.

92.    On information or belief, Reimer had access to, and knowledge of, the existence of the Lost Note Affidavit through its relationship with Bayview and MetLife.

93.    As a result of Reimer's knowledge of, or access to, the Lost Note Affidavit, Reimer had an obligation to provide it to Plaintiff and the court in the Prior Case as part of the Foreclosure Complaint and Blain Affidavit.

94.    On information and belief, Bayview, MetLife, and Reimer, individually or in concert, (a) intentionally secreted and withheld the Lost Note Affidavit, (b)

represented in the Foreclosure Complaint that the Note might only be misplaced when it had been lost well before the Mortgage was assigned to Bayview or MetLife, and (c) presented the Blain Affidavit which fraudulently implied the Note had been found, all in a deliberate attempt to prevent the court from uncovering MetLife's known lack of standing to prosecute the Prior Case.

95.     As a direct and proximate result of Bayview's, MetLife's, and Reimer's unfair, deceptive, and abusive debt collection practices, Plaintiff has incurred actual damages related to defending his home from foreclosure.

96.     Bayview, MetLife, and Reimer engaged in false, deceptive, or abusive debt collection practices within the Prior Case in violation of §807(2)(A) of the Fair Debt Collection Practices Act by falsely representing that MetLife was entitled to enforce the Note and Mortgage where R.C. §1303.38 prohibited MetLife from acquiring any interest in the lost Note.  (Count 3A).

97.     Bayview, MetLife, and Reimer engaged in false, deceptive, or abusive debt collection practices within the Prior Case in violation of §807(10) of the Fair Debt Collection Practices Act first by implying that the Note might have been "misplaced" by MetLife, despite possessing the Lost Note Affidavit confirming that neither Bayview nor MetLife had ever taken physical possession of the Note; and then by filing the false Blain Affidavit representing that MetLife was in possession of the original Note in an attempt to obtain judgment on the Note.  (Count 3B).

98.     Bayview, MetLife, and Reimer engaged in false, deceptive, or abusive debt collection practices within the Prior Case in violation of §809(a)(2) of the Fair Debt Collection Practices Act by attaching a Notice under the Fair Debt Collection

16

Practices Act to the Foreclosure Complaint asserting that "[MetLife] as named in this Complaint is the creditor to whom the debt is owed" when in fact, the rightful creditor was whatever entity was in possession of the original Note and entitled to enforce it, prior to execution of the Lost Note Affidavit on May 30, 2013, when the Note was lost.  (Count 3C).

99.    Bayview and MetLife, individually or in concert, engaged in false, deceptive, or abusive debt collection practices following dismissal of the Prior Case in violation of the Fair Debt Collection Practices Act by subjecting Plaintiff to additional litigation and debt collection risk through the "sale" of the Mortgage to U.S. Bank in March 2016 with actual knowledge that neither Bayview nor MetLife ever held an enforceable interest in the underlying Note because the Note was lost and became non-negotiable prior to either Bayview or MetLife receiving assignment of the Mortgage.  (Count 3D).

100.   Plaintiff is due any and all damages, costs, expenses, and legal fees allowed under the Fair Debt Collections Practices Act against Defendants Reimer, Defendants MetLife, and Defendants Bayview individually for the actions described in Counts 3A, 3B, 3C, and/or 3D.

## COUNT FOUR:
## FRAUDULENT MISREPRESENTATION/NEGLIGENT MISREPRESENTATION
### [Defendants MetLife, Bayview and Reimer]

101.   Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

102.    MetLife, Bayview, and Reimer, individually or in concert, intentionally or recklessly made false representations, with knowledge of the falsity of the representations, to the court in the Prior Case regarding the whereabouts and physical possession of the Note.

103.    MetLife, Bayview, and Reimer, individually or in concert, intentionally or recklessly caused the court in the Prior Case to rely upon their misrepresentations to obtain judgment on the Note and Mortgage.

104.    The court in the Prior Case did reasonably rely on the sworn statements contained in the Blain Affidavit in rendering judgment against Plaintiff.

105.    MetLife, Bayview, and Reimer, individually or in concert, thereby committed fraudulent misrepresentation against Plaintiff.  (Count 4A).

106.    If MetLife, Bayview, and Reimer, or any of them, lacked sufficient intent for their misrepresentations to be fraudulent, their misrepresentations were negligent or grossly negligent, constituting the tort of negligent misrepresentation. (Count 4B).

107.    As a direct and proximate result of MetLife, Bayview, and Reimer's fraudulent and/or negligent misrepresentations, Defendants owe Plaintiff his actual damages in vacating said judgment, and in defending against foreclosure in the Prior Case, and damages for mental anguish, punitive damages, legal fees, and costs.

## COUNT FIVE:
## SLANDER OF TITLE
### [Defendants Bayview, MetLife and Reimer]

108.   Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

109.   Plaintiff filed his Motion for Summary Judgment in the Prior Case on November 17, 2015, asserting that the Note and Mortgage had been incurably separated resulting in an unsecured Note and an unenforceable Mortgage.

110.   MetLife c/o Bayview submitted a Notice of Dismissal of the Prior Case on December 7, 2015.

111.   Despite being notified of the unenforceability of the Mortgage in the November 17, 2015 filing, MetLife has failed to release the Mortgage and remove the cloud on title from the public record, constituting a continuing publication of a slanderous statement disparaging Plaintiff's title.

112.   By inference from documents, MetLife has known about the unenforceability of the Mortgage since the assignment to it of the Mortgage on May 12, 2014, as a result of the Lost Note Affidavit dated May 30, 2013.

113.   By inference from documents, Bayview and Reimer, as MetLife's agents, knew about the Lost Note Affidavit before they filed the Prior Case and that the Prior Case would therefore be slanderous to Plaintiff's title.

114.   The claims made by MetLife and its agents Bayview and Reimer, claiming a right to foreclose in the filings of the Prior Case were, and its continuing publication of its claimed Mortgage interest is, made with malice or reckless disregard of its falsity.

115. The "sale" of the Mortgage by MetLife and Bayview to U.S. Bank was made with actual knowledge that MetLife lacked standing to enforce the Note and was completed with malice or reckless disregard for the falsity of MetLife's claimed entitlement to enforce the Note and Mortgage.

116. As a direct and proximate result of the title slanders of MetLife, Bayview and Reimer, said Defendants individually and collectively owe Plaintiff actual and special damages, including legal fees and costs, and punitive damages in an amount of at least $25,000.00

## COUNT SIX:
## CIVIL CONSPIRACY
## [All Defendants]

117. Plaintiff incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully restated herein.

118. MetLife, Bayview, and Reimer maliciously worked together to prosecute the Prior Case while intentionally secreting the Lost Note Affidavit that they knew, or should have known, would demonstrate MetLife's inability to enforce the Note.

119. The malicious combination of MetLife, Bayview, and Reimer in the Prior Case caused Plaintiff to suffer damages related to defending his home from foreclosure.

120. In the Prior Case, Bayview provided Reimer with the executed Blain Affidavit, on behalf of MetLife, with knowledge of its falsity and with a malicious or reckless intent of fraudulently misleading the court into entered judgment against Plaintiff.

121. In the Prior Case, Reimer filed the Blain Affidavit, on behalf of MetLife c/o Bayview, with knowledge of its falsity and with a malicious or reckless intent of fraudulently misleading the court into entered judgment against Plaintiff.

122. Following the dismissal of the Prior Case, MetLife and Bayview, and possibly U.S. Bank and ClearSpring, maliciously worked together to "transfer" the Mortgage to U.S. Bank for purposes of collecting a debt from Plaintiff which the conspiring parties knew, or should have known, was not enforceable by Bayview or MetLife, and would not become enforceable through the "transfer" to U.S. Bank.

123. Wherefore, MetLife, Bayview, and Reimer, and possibly U.S. Bank and ClearSpring, engaged in civil conspiracies to commit all of the wrongs described in the other preceding counts and are each liable for all of the damages and other relief awardable herein.

**WHEREFORE**, (A) Plaintiff says the Defendants have knowingly and voluntarily separated the Mortgage from the underlying obligation of the Note thus leaving the Note unsecured and the Mortgage as an unenforceable cloud on title. (B) Plaintiff seeks a declaratory judgment declaring the Note unsecured and not enforceable by the Defendants, or one or more of them, and an order from this court granting a quieting of title, judicially cancelling said mortgage and awarding attorney fees and such other relief as this Court deems appropriate. (C) Plaintiff seeks findings that one or more or all the Defendants, severally, jointly, or in a civil conspiracy, committed wrongful acts of fraudulent or negligent misrepresentations, violations of the Fair Debt Collection Practices Act, and/or slander of title and owe damages, costs, attorney fees, and punitive damages related to their conduct.

Respectfully submitted,

/s/Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Emily White  (0085662)
The Dann Law Firm Co., LPA
PO Box 603104
Cleveland, OH 44103
216/373-0539
216/373-0536 – fax
notices@dannlaw.com
*Co-Counsel for Plaintiff Timothy Skaggs*

Michael J. O'Reilly (0019892)
Andrew C. Clark (0083519)
O'REILLY LAW OFFICES
30 Hill Road South
Pickerington, Ohio 43147
Phone:  (614) 833-3777
Fax:  (866) 257-8939
E-mail:  michael@oreillylawyers.com
*Co-Counsel for Plaintiff Timothy Skaggs*

## JURY DEMAND

Plaintiff hereby demands a civil jury trial of eight jury members of all issues herein that are so triable.

/s/ Marc E. Dann, Esq.
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Emily White  (0085662)
Michael J. O'Reilly (0019892)
Andrew C. Clark (0083519)