## LOST NOTE AFFIDAVIT AND INDEMNIFICATION AGREEMENT

STATE OF <u>MINNESOTA</u>  
COUNTY OF <u>HENNEPIN</u>

Loan# ▮▮▮▮▮

Exhibit __A-1__

Michael L. Hambleton, being first duly sworn upon oath deposes and states:

That he/she is the Vice President of Loan Documentation for Wells Fargo Bank, N.A. ("Wells Fargo").

That he/she is authorized by Wells Fargo to execute this Lost Note Affidavit and Indemnification Agreement in favor of Bayview Acquisitions LLC ("Purchaser"). Notwithstanding anything contained herein, he/she shall have no personal liability pursuant to this Lost Note Affidavit and Indemnification Agreement.

That the Mortgage Note, executed by **TIMOTHY A SKAGGS** in the original principal sum of **$78,500.00** payable to the order of Southtrust Mortgage Coporation, a copy of which is attached hereto as <u>Exhibit A</u> (the "Note"), was lost, is missing and/or destroyed and neither the Affiant nor, to the best of Affiant's knowledge, any of the directors, officers, or employees of Wells Fargo have any knowledge of the location or whereabouts of said Note and, to the best of Affiant's knowledge, said Note has not been paid, satisfied, transferred, assigned, pledged, or hypothecated in any way.

NOW, THEREFORE, for and in consideration of Purchaser and its successors and assigns, accepting a certified copy of the Note in lieu of the original Note, Wells Fargo does hereby agree to defend, indemnify and hold harmless Purchaser, its respective transferees, and their respective assigns, officers, directors, employees, agents, attorneys and representatives (collectively, the "Indemnified") from and against any and all loss or damage together with all reasonable costs, charges and expenses (whether or not a lawsuit is filed) (collectively, the "Loss") incurred by reason of any claim, demand, suit, cause of action or proceeding by a third party arising out of (i) the inability of the Indemnified to enforce the Note according to its terms, (ii) the inability of the Indemnified to recover any related insurance proceeds, or (iii) the inability of the Indemnified to foreclose on the collateral securing the Note, in each case due to the unavailability of the original Note. Wells Fargo shall pay any such Loss upon demand, provided that Wells Fargo is notified of any such Loss in writing, within thirty (30) calendar days after the Indemnified has actual knowledge of same, at the following address: Wells Fargo Bank, N.A., 2701 Wells Fargo Way, MAC X9901-03A, Minneapolis, MN 55467; Attention: Mike Hambleton; with copy to: Wells Fargo Bank, N.A., 800 Walnut Street, MAC N0001-09A, Des Moines, IA 50309; Attention: General Counsel (Capital Markets); provided further, that Wells Fargo will not be liable to the Indemnified for any additional costs, expenses, damages, charges and losses associated with such Loss that are attributable to the diminished ability of the Indemnified and/or Wells Fargo to enforce or defend any rights that the Indemnified may have under the related original Note, if the Indemnified does not notify Wells Fargo of any such Loss within thirty (30) calendar days; and further provided that Wells Fargo is given full opportunity to direct or assist, at Wells Fargo's option, the defense or settlement of any such Loss.

Wells Fargo does hereby further agree that should the original Note ever be found by it, it will promptly notify Purchaser and upon receipt by Wells Fargo of the original Note, will endorse to Purchaser or its designee without recourse such original Note and promptly forward said original Note to Purchaser or its designee. Upon receipt of the original Note by Purchaser, this Lost Note Affidavit and Indemnification Agreement shall become null and void as to any loss accruing subsequent to Purchaser's receipt of such original Note; provided, however, Wells Fargo shall remain liable as to any Loss accruing on or prior to Purchaser's receipt of such original Note.

Executed this day, 5/30/2013.

WELLS FARGO BANK, N.A.

By: _[signature]_  
Name: Michael L. Hambleton  
Its: Vice President of Loan Documentation

Subscribed and sworn to before me this day, 5/30/2013

_[signature]_  
Notary Public



VALERIE A. DE SOUZA  
NOTARY PUBLIC-MINNESOTA  
My Commission Expires Jan 31, 2017  
Commission # 31019711

## ALLONGE FOR THE PURPOSE OF ENDORSEMENT

Loan Number: ███████

Note Date: January 29, 2004

Loan Amount: $78,500.00

Borrower(s): Timothy A. Scaggs

Address: 3140 Portman RD, Coloumbus, OH 43232

WITHOUT RECOURSE
PAY TO THE ORDER OF

*Bayview Loan Servicing, LLC*

Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A.

By: _____
Roy G. Thompson III
Wells Fargo Bank, N.A.
Vice President Loan Documentation

  

THIS IS TO CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL DOCUMENT
WELLS FARGO BANK, N.A.

# NOTE

January 29, 2004        Louisville        KENTUCKY
[Date]        [City]        [State]

3140 PORTHAN RD, Columbus, OH 43232

(Property Address)

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $79,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is SouthTrust Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on March 01, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 01, 2019, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 181 N MILL STREET SUITE 5, Lexington, KY 40507 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 697.14

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

41668706        41668706
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0207).01      Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3      Initials:

 

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of ten calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

41668706                                                                                                             41668706

Form 3200 1/01
Initials:

VMP-5N (0207) 01                         Page 2 of 3

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Timothy A Skaggs_ (Seal)
TIMOTHY A SKAGGS  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

41668706

-6N (0207) 01

Page 3 of 3

41668706

Form 3200 1/01

Pay To The Order of

Without Recourse
South Trust Mortgage Corporation

By: _Paul J. Gilly_
Paul J. Gilly
Assistant Vice President